FILED
2026 Sep-30 PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRYCELYN G. HEARNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:25-cv-01588-HNJ |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Brycelyn Hearns seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") regarding her claim for a period of disability and disability insurance benefits. (Doc. 1). The undersigned carefully considered the record, and for the reasons expressed herein, the court **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate judge conduct any and all proceedings, including the entry of final judgment. (Doc. 17).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00-114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would

prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* § 404.1520(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education, and past work experience, that the claimant can perform other work. *Id.* § 404.1512(b)(3), 404.1520(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* § 404.1520(a)(4)(v); *see also id.* § 404.1520(g).

If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla,' . . . [and] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Hearns filed an application for disability and disability insurance benefits on August 20, 2021, alleging disability as of June 8, 2019. (Tr. 402-04). On December 5, 2022, the Commissioner denied the application. (Tr. 87). Hearns requested reconsideration, which the Commissioner denied on August 23, 2023. (Tr. 151). Hearns timely filed a request for a hearing before an administrative law judge, (Tr. 159), and the ALJ held a hearing on March 12, 2024. (Tr. 57-82). The ALJ issued a decision denying Hearns's claim on May 1, 2024. (Tr. 112-33). Hearns timely requested review of the ALJ's decision. (Tr. 264-66).

On October 15, 2024, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration of evidence submitted but not entered into the record. (Tr. 134-39). On March 11, 2025, a different ALJ held a remand hearing. (Tr. 38-56). On March 17, 2025, the ALJ issued an opinion again denying Hearns's claim.

Applying the five-step sequential process, the ALJ found at step one that Hearns had not engaged in substantial gainful activity between her June 8, 2021, alleged onset date and her December 31, 2022, date last insured. (Tr. 127). At step two, the ALJ determined Hearns manifested the severe impairments of obesity, asthma, hypertension, obstructive sleep apnea, anxiety, depression, and diabetes mellitus. (Tr. 19). At step three, the ALJ concluded Hearns did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-23).

At step four, the ALJ found Hearns exhibited the residual functional capacity ("RFC") to perform

> less than the full range of sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. The claimant should never climb ladders, ropes or scaffolds but can have occasional exposure to extremes of cold, heat and humidity. She should not work from unprotected heights or around hazardous machinery. She is capable of understanding, remembering and carrying out simple instructions and tasks. She can have occasional work-related interaction with supervisors, co-workers and the general public.

(Tr. 23).

The ALJ determined Hearns did not retain the ability to perform her past relevant work as a bartender or bartender helper. (Tr. 28-29). However, considering Hearns's age (38 as of December 31, 2022, the date last insured), education, work experience, and residual functional capacity, she could perform jobs existing in significant numbers in the national economy, including order clerk and lens inserter. (Tr. 29-30). Therefore, the ALJ concluded Hearns "was not under a disability … at any time from … the alleged onset date [to] … the date last insured." (Tr. 30).

Hearns filed a request for review of the ALJ's decision before the Appeals Council. (Tr. 393-95). On July 30, 2025, the Appeals Council denied Hearns's request for review, which deems the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Hearns filed the Complaint in the present case on September 16, 2025. (Doc. 1).

## ANALYSIS

In this appeal, Hearns argues (1) James's, Dr. Pack's, and Dr. Meyers's opinions imposed more restrictive limitations than the ALJ adopted, and the ALJ erred by failing to explain his failure to incorporate the opinions in Hearns's mental RFC limitations, and (2) the ALJ committed reversible error by failing to articulate any consideration of the supportability of Drs. Sellman and Hogan's opinions; failing to explain his omission of Drs. Sellman and Hogan's opined environmental limitations, despite finding the environmental limitations "at least somewhat persuasive," (doc. 20 at 17); omitting Drs. Sellman and Hogan's opined environmental limitations in the hypotheticals posed to the vocational expert ("VE"); and improperly basing the RFC determination on his lay opinion. For the reasons discussed below, the undersigned concludes Hearns's contentions do not warrant reversal.

### I. THE ALJ PROPERLY CONSIDERED JAMES'S, DR. PACK'S, DR. MEYERS'S, DR. SELLMAN'S, AND DR. HOGAN'S OPINIONS, AND HE DID NOT OMIT ANY NECESSARY LIMITATIONS FROM THE RFC FINDING

Hearns first argues the mental medical opinions the ALJ deemed persuasive imposed more restrictive limitations than the ALJ adopted, and the ALJ erred by failing to explain his failure to adopt them. However, applicable law does not require an ALJ to include every limitation a reviewing physician imposes, and the court does not construe the mental medical opinions as necessarily inconsistent with the RFC finding.

Overall, substantial evidence supports the ALJ's RFC finding as to Hearns's mental limitations.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The claimant's RFC represents "the most [he or she] can still do despite [their] limitations." *Id.* at § 404.1545(a)(1). Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See id.* at § 404.1527(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) (citations omitted) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

In assessing Hearns's RFC as to her mental limitations, the ALJ relied upon the opinions of state agency psychological consultants and an independent consultative Licensed Professional Counselor ("LPC"). "The opinions of agency psychological consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source." *Gordon v. Saul*, No. 8:18-cv-829-T-SPF, 2019 WL 4254470, at *5 (M.D. Fla. Sept. 9, 2019) (citing 20 C.F.R. §§

404.1513a(b), 416.913a(b)).[2]

Social Security regulations declare the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must apply the same factors in the consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion. *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors. *Id.* § 404.1520c(b)(2). Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent

[2] "A psychological consultant is a member of a team that makes disability determinations in a State agency . . . , or who is a member of a team that makes disability determinations for [the SSA] when [the SSA] make[s] disability determinations." 20 C.F.R. § 404.1616(b). "The psychological consultant completes the medical portion of the case review and any applicable residual functional capacity assessment about all mental impairment(s) in a claim." *Id.*

of the treatment relationship, and the frequency of examinations. *Id.* § 404.1520c(c)(3)-(5). The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file. *Id.* § 404.1520c(c)(3)(v). The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

**A. The ALJ's RFC Determination Appropriately Reflects Brenda James's Opinion**

At a consultative psychological examination on December 1, 2022, Brenda James, M.Ed., LPC-S, assessed Hearns's mental limitations. She recorded her "INITIAL DIAGNOSTIC IMPRESSION" as "Major Depressive Disorder, Single Episode, Mild to Moderate, With Anxious Distress Adjustment Disorder With Depressed Mood." (Tr. 1159). James chronicled Hearns's statements regarding her psychological ailments and general history, yet she evaluated Hearns as "alert and oriented to person, place, time, and situation" with cooperative demeanor; unremarkable speech "with a logical stream of thought"; appropriate mood "with affect appropriate to content"; and no "suicidal or homicidal ideations" or attention to internal stimuli. (Tr. 1161).

James reported the following "SENSORIUM AND COGNITIVE

FUNCTIONING" for Hearns:

> Ms. Hearns was alert and oriented to person, place, time, and situation. She was able to perform serial 7 subtractions from 100. She was **able** to perform serial 4 additions from 1. She correctly calculated **three** out of three single-digit multiplication problems and **two** out of two simple word problems. When asked the similarity between an orange and a banana, she responded, "**they are both fruits**." When asked the similarity between a dog and a lion, she responded, "**they are both animals**." When asked to interpret the proverb about spilled milk, she responded, "**don't get upset over something you can't control**." When asked what she would do if thick smoke was observed coming from the window of a neighbor's home, she replied, "**call the fire department**." Ms. Hearns was **able** to give details of current news items. She was **able** to correctly identify the current President. She identified three large cities to be, "**LA, New York City and Miami**." Ms. Hearns indicated there are **52** weeks in a year. She recited **seven** digits forward and **six** digits in reverse. She was **able** to describe meals eaten in the last **24** hours. She was **able** to give dates of birth of significant people in her life. She **did know** the age at which she left school. She was **able** to give dates of previous employment. Ms. Hearns' level of intellectual functioning appeared to be in the **average** range. She appeared to have **fair** insight into her current situation.
>
> Rapport was established and Ms. Hearns appeared to exhibit **adequate** effort on the Sensorium. Therefore, it is considered to be **representative** of this claimant's current level of functioning. Ms. Hearns **would not** require assistance handling any awarded funds.

(*Id.*) (emphasis in original).

James concluded "Hearns presented as **moderately** impaired in her ability to understand, remember, and carryout instructions and to respond appropriately to supervision, coworkers, and work pressures in a work setting. Her prognosis would be considered **guarded** with appropriate treatment." (*Id.*) (emphasis in original).

The ALJ found James's opinion persuasive because it was "supported by the

assessment and consistent with the claimant's lack of formal mental health treatment." (Tr. 27). Hearns contends the ALJ erred by extrapolating James's findings to an RFC limitation of understanding, remembering, and carrying out simple tasks and instructions. (Tr. 23, 1161). Specifically, Hearns argues James "did not specify that her finding pertained to complex or detailed instructions," and the ALJ erred in applying James's opinion with an RFC restriction to understanding, remembering, and carrying out simple instructions and tasks without providing any supporting justification or explanation for his interpretation. (Doc. 20 at 15).

The ALJ does not need to adopt wholesale every aspect of every medical opinion, so long as he engaged in a thorough review of the evidentiary record and assessed Hearns's medical condition as a whole. *See Shakesha F. v. Saul*, No. 1:19-cv-01997-CMS, 2020 WL 13533800, at *7 (N.D. Ga., Mar. 6, 2020). As another district court explained:

> So long as the ALJ's decision makes clear he considered the claimant's medical condition as a whole, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citation omitted). And when an ALJ finds a medical source's opinion persuasive, an ALJ "does not abdicate their authority — and obligation — to reach an RFC determination based on a thorough review of the entire evidentiary record." *Vilches v. Kijakazi*, No. 3:21-cv-15-KFP, 2022 WL 11455775, *3 n.2 (M.D. Ala. Oct. 19, 2022). "An ALJ does not properly discharge [his] duty by finding a single medical opinion persuasive and then deferring verbatim to that physician's findings. The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive." *Id.*; *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ."); *Sanders v. Comm'r of Soc. Sec.*, No.

> 2:20-cv-788-NPM, 2022 WL 970181, *5 (M.D. Fla. Mar. 31, 2022) ("But finding an opinion persuasive does not mean it is controlling."). So Scheib's concern that the ALJ did not incorporate into the RFC every finding from a generally persuasive source is unfounded. What matters is whether the record reveals enough about the supportability and consistency of the medical source's opinion that the court can determine the RFC is supported by substantial evidence. *See Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173, *4 (M.D. Ala. Feb. 11, 2022); *Cook*[ *v. Comm'r of Soc. Sec.*], [No. 6:20-cv-1197-RBD-DCI,] 2021 WL 1565832, at *3 [(M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)].

*Scheib v. Comm'r of Soc. Sec.*, No. 2:22-cv-489-NPM, 2023 WL 6365462, at *5 (M.D. Fla. Sept. 29, 2023) (first three alterations in original).

Pertinent authority depicts that James's assessment of a moderate limitation in understanding, remembering, and carrying out instructions substantially buttresses the ALJ's RFC finding that Hearns is capable of understanding, remembering, and carrying out simple instructions and tasks. *See Shaffron v. Comm'r of Soc. Sec.*, No. 8:20-cv-2930-WFJ-SPF, 2022 WL 4229339, at *7 (M.D. Fla. July 19, 2022) (holding the ALJ accounted for the claimant's moderate limitation in understanding, remembering, and applying information by the RFC's limitation to simple tasks), *report and recommendation adopted,* No. 8:20-CV-2930-WFJ-SPF, 2022 WL 3355094 (M.D. Fla. Aug. 15, 2022); *Jervis v. Bisignano*, No. 8:24-cv-02751-AEP, 2026 WL 522989, at *4 (M.D. Fla. Feb. 25, 2026) ("Regarding the functional domain of understanding, remembering, or applying information, 'cases analyzing this newer functional area are not as prevalent, but courts generally hold that a limitation in the RFC to simple or routine tasks is sufficient.'" (quoting *Enriquez v. O'Malley*, No. 8:23-cv-0374-TPB-SPF, 2024 WL 533150, at *5

(M.D. Fla. Jan. 24, 2024), *report and recommendation adopted*, No. 8:23-cv-374-TPB-SPF, 2024 WL 519764 (M.D. Fla. Feb. 9, 2024))).

Hearns's critique of the ALJ's RFC formulation in this regard rests upon an erroneous distinction. Specifically, Hearns contends James's finding of a moderate impairment in her ability to understand, remember, and carryout instructions did not apply only to "complex or detailed instructions." (Doc. 20 at 15). That is, Hearns essentially attacks the RFC's limitation to understanding, remembering, and carrying out *simple* tasks and instructions because James's opinion warrants a more restrictive RFC, ostensibly limiting employment to jobs involving less-than-simple tasks and instructions or no duties whatsoever engaging those functions.

As delineated previously, Hearns's contentions warrant no relief. James did not endorse an extreme or marked limitation in Hearns's ability to understand, remember, and carry out tasks and instructions. Rather, she appropriately restricted Hearns to simple tasks and instructions based upon her moderate psychological impairments. *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (holding substantial evidence supported RFC restriction to "simple, routine, repetitive tasks" because physicians' evaluations of "Moderately Limited" ability reflected assessments of "adequate mental ability to carry out simple instructions and to relate adequately to others in a routine work setting" and retention of "necessary mental capabilities to at least do simple, type tasks and assignments") (cleaned up).

Hence, the RFC's limitation to understanding, remembering, and carrying out

simple tasks and instructions aptly captures James's prescription of a moderate impairment as to those abilities, and thus, substantial evidence supports the ALJ's opinion in this regard.

### B. Drs. Pack and Meyers's Opinions Do Not Sustain a Challenge to the RFC Determination

On December 5, 2022, Byron T. Pack, Psy.D., assessed Hearns's mental limitations pursuant to an initial state agency level review. After reviewing the record evidence available at the time, Dr. Pack concluded Hearns experienced understanding and memory limitations, yet she could understand and retain both simple and complex instructions as well as understand and remember simple and detailed instructions. (Tr. 96-97). Dr. Pack concluded Hearns experienced mild limitations in understanding and memory. (*Id.*). Dr. Pack found Hearns not significantly limited in the abilities to remember locations and work-like procedures, understand and remember very short and simple instructions, or understand and remember detailed instructions. (*Id.*).

As to sustained concentration and persistence, Hearns experienced moderate limitation in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 97). She also experienced moderate limitation in the abilities to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a constant pace without an unreasonable number and length of rest periods.

(*Id.*). She experienced no significant limitation in the abilities to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentrate for extended periods, sustain an ordinary route with special supervision, or make simple work-related decisions. (*Id.*). Dr. Pack commented Hearns "would benefit from a flexible schedule," "would function best with her own work area/station apart from others," and "may be expected to miss 1 or 2 days of work per month due to exacerbation of psychiatric symptoms." (*Id.*).

As to social interaction limitations, Hearns experienced moderate limitation in the abilities to interact appropriately with the public, accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). She experienced no significant limitation in the abilities to ask simple questions, request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. (*Id.*). Dr. Pack commented Hearns "could cooperate on simple and some complex, routine tasks and transactions," "was able to relate appropriately in spite of impairments," "may have shown limited tolerance for frequent, recurrent contact with the general public, and may have functioned best at tasks with limited social demands." (*Id.*). Dr. Pack further noted Hearns's "interaction and contact with the general public should be casual," and "[c]riticism and feedback from supervisors and co-workers in the workplace should be casual and non-confronting." (Tr. 97-98). Dr. Pack also commented Hearns "would be expected to have occasional conflicts with coworkers."

(Tr. 98).

As to adaptation, Hearns experienced moderate limitation in the ability to respond appropriately to changes in the work setting. (*Id.*). She experienced no significant limitation of the abilities to appreciate normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, set realistic goals, or make plans independently of others. (*Id.*). Dr. Pack commented Hearns "was capable of adapting adequately to changes and demands of simple and some complex tasks." (*Id.*). Dr. Pack further noted that "[c]hanges in the workplace should be gradually introduced." (*Id.*).

On August 19, 2023, James L. Meyers, Psy.D., assessed Hearns's mental RFC at the state agency reconsideration phase. (Tr. 108-09). After reviewing the record evidence available at the time, Dr. Meyers affirmed Dr. Pack's mental RFC opinion. (*Id.*).

The ALJ expressed as follows regarding the state agency consultants' opinions:

> At the initial level, Byron Pack, Psy.D. reviewed the medical evidence in the file and determined that the claimant would be able to understand and remember simple and detailed instructions. Dr. Pack also determined that the claimant would be able to attend and concentrate for extended periods on these tasks. However, Dr. Pack determined that the claimant "would benefit from a flexible schedule", "would function best with her own work area/station apart from others", and "may be expected to miss 1 to 2 days of work per month due to exacerbation of psychiatric symptoms." Dr. Pack determined that the claimant's contact with the general public should be "casual" and criticism and feedback from supervisors and co-workers should be "casual and non-confronting" noting also that the claimant "would be expected to have occasional conflicts with co-workers." Finally, Dr. Pack determined that the claimant

> could adapt to changes in the workplace that are gradually introduced. This was affirmed on reconsideration by James Meyer[s], Psy.D. There are multiple limitations and/or recommendations in this mental residual functional capacity assessment that are not phrased in vocationally relevant terms and do not pertain to any vocational description in the Dictionary of Occupational Titles or its companion publications. These opinions are vague and do not provide meaningful insight into the claimant's ability to perform basic mental job skills. Accordingly, the undersigned has modified the cited language to more adequately conform to vocational terms. The undersigned notes also that these opinions include items related to conditions of the work environment such as supervisory feedback. However, issues such as supervisory style are idiosyncratic elements of particular jobs, not general occupational guidelines or requirements. Presumably, every worker would prefer a supportive and non-confrontational work environment, but the personality and management style of a worker's supervisor is not an aspect of the circumstances of employment that could realistically be covered by the Administrative Law Judge or vocational expert in the context of a disability hearing. Moreover, descriptions such as casual, supportive, limited, tactful and non-confrontational are vague, open to individual interpretation and provide no meaningful information as to the claimant's abilities. Likewise, the number and proximity of coworkers is another area that is beyond the control and professional knowledge of a vocational expert testifying regarding available work. Accordingly, the undersigned is overall generally persuaded by these assessments as to the general tenor suggested but the undersigned is not persuaded by the precise language and limitations suggested as these are inconsistent with general occupational guidelines.

(Tr. 26-27).

As to Drs. Pack and Meyers's opinions, Hearns argues that despite being "overall generally persuaded" by Drs. Pack and Meyers's statements, the ALJ erred by concluding "their opinions simply meant [Hearns] was limited to occasional interactions with others and understanding, remembering, and carrying out simple tasks and instructions." (Tr. 27, doc. 20 at 15). Hearns argues the ALJ "failed to provide a clear

explanation addressing the conflict" between their opinions and the mental RFC assessment. (Doc. 20 at 15-16).

As an initial matter, the physicians' opinions contained statements the ALJ could not effectively heed, as reflected in a recent opinion issued in this district:

> Lewis-Moore does not explain what the consultants' terms would mean in vocational practice, why "casual" contact is equivalent to "superficial" contact, or how a vocational expert would apply either phrase to an occupation in the Dictionary of Occupational Titles. The ALJ's objection to the narrative aspects of their opinions as "vague" raises this exact problem, and an ALJ need not adopt a limitation that cannot be expressed in terms a vocational expert can evaluate. *Cf. Crawford* [*v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)].
>
> Indeed, the Eleventh Circuit has dealt with this precise issue in *Hand v. Social Security Administration, Commissioner*, 786 F. App'x 220, 225 (11th Cir. 2019). There, "[t]he ALJ explained that she gave some, but not great weight to Dr. Estock's mental RFC assessment, as he included multiple recommendations that were not phrased in vocationally relevant terms," such as by noting that the claimant "would benefit from a flexible schedule, supportive feedback, casual supervision, and non-confrontational criticism." *Id.* Like the ALJ here, the ALJ in *Hand* explained that "these were not factors that could 'realistically be covered by the ALJ or vocational expert in the context of a disability hearing,'" and the Eleventh Circuit "s[aw] no error in this regard." *Id.*

*Lewis-Moore v. Bisignano*, No. 5:25-cv-1587-EGL, 2026 WL 2824793, at *3-4 (N.D. Ala. Sept. 21, 2026).

Heeding the foregoing guidance, substantial evidence supports the ALJ's RFC assessment. Dr. Pack and Dr. Meyers assessed Hearns with moderate limitations in interacting appropriately with the general public, accepting instructions, responding appropriately to criticism from supervisors, and getting along with coworkers or peers

without being distracted or exhibiting behavioral extremes. As pertinent authority portrays, those assessments substantially support the RFC's limitations to occasional work-related interaction with supervisors, co-workers, and the general public. *See Statum v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:14-cv-1297-J-MCR, 2017 WL 744706, at *3 (M.D. Fla. Feb. 27, 2017) (citations omitted) (holding ALJ's RFC assessment limiting plaintiff to "no more than occasional interaction with the general public, coworkers, and supervisors" adequately incorporated physicians' opinions plaintiff would likely have difficulty in sustaining appropriate relations among coworkers and supervisors, experience moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors, and would be able to cooperate and be socially appropriate but would have difficulties accepting criticism from supervisors); *Sheldon v. Comm'r of Soc. Sec.*, No. 8:15-cv-1831-T-JSS, 2016 WL 4120444, at *3 (M.D. Fla. Aug. 3, 2016) (citation omitted) ("[T]he ALJ's hypothetical and RFC sufficiently account[] for Plaintiff's moderate limitations in social functioning by limiting Plaintiff to no more than occasional interaction with crowds, the public, and co-workers.").

Moreover, the physicians assessed Hearns with moderate limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace

without an unreasonable number and length of rest periods, and responding appropriately to changes in the work setting. (Tr. 96-98, 108-09). Again, pertinent authority depicts those assessments buttress the RFC's restrictions to simple instructions and tasks. *See Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 540-41 (11th Cir. 2014) ("The ALJ adequately . . . implicitly accounted for [claimant's moderate] limitations in concentration, persistence, and pace when he imposed a limitation of simple work."); *Riley v. Astrue*, No. 6:11-cv-1437-Orl-JRK, 2012 WL 3522640, at *7 (M.D. Fla. Aug. 14, 2012) ("[T]he specific inclusion of 'a low-stress work environment' and 'simple tasks' accounts for Plaintiff's moderate limitations in concentration, persistence, and pace."); *Dawson v. Comm'r of Soc. Sec.*, No. 6:11-cv-1128-ORL-28, 2012 WL 1624267, at *2 (M.D. Fla. May 9, 2012) (collecting cases recognizing the inclusion of limitations such as work involving simple tasks and/or simple instructions properly accounts for moderate limitations in concentration, persistence, and pace), *aff'd*, 528 F. App'x 975 (11th Cir. 2013); *see also Bell v. Comm'r of Soc. Sec.*, No. 3:23-cv-914-DNF, 2024 WL 3423005, at *4 (M.D. Fla. July 15, 2024) (ALJ's RFC limiting claimant to occasional changes in a routine work setting accommodate claimant's moderate limitation in adapting and managing).

Ultimately, the foregoing observations incite the question whether a conflict actually manifests between the physicians' statements and the ALJ's RFC. On this score, Hearns primarily contends the RFC omits the physicians' opinions Hearns "would benefit from a flexible schedule," "would function best with her own work

area/station apart from others," and "may be expected to miss 1 to 2 days of work per month due to exacerbation of psychiatric symptoms." (Tr. 96-98, 107-09). However, Dr. Pack and Dr. Meyers did not restrict or limit Hearns to such environments and circumstances; they only observed she would function *best* in such environments and circumstances, and they did not opine Hearns was incapable of working in the absence of the restrictions. *See Lewis-Moore*, 2026 WL 2824793, at *4 ("Both consultants wrote that contact 'should' be casual and that feedback 'should' be supportive, tactful, and non-confrontational 'to prevent unnecessary stress.' . . . Framed that way, these appear to be recommendations about a preferable work environment rather than statements about what Lewis-Moore can still do despite her impairments, and so they do not squarely fit the regulatory definition of a medical opinion. . . . A consultant's observation that a claimant would benefit from an accommodation does not compel the ALJ to impose it as a vocational restriction. . . . Avoiding unnecessary stress would benefit most workers. It says little about whether this worker can function without the extra stress." (citing, *inter alia*, *Daywalt v. Kijakazi*, No. 1:20CV277, 2021 WL 3679304, at *8 (M.D.N.C. Aug. 19, 2021) ("A *recommendation* that a patient undertake certain ameliorative measures does not equate to a physical *restriction* or a judgment about what Plaintiff can still do despite her impairments."))); *Crumley v. Comm'r of Soc. Sec.*, No. 3:17-cv-973-J-PDB, 2019 WL 1417320, at *4 (M.D. Fla. Mar. 29, 2019) (characterizing a state agency doctor's observations that the claimant "'would respond best' and 'may benefit from' a nonconfrontational supervisor" as recommendations for "an ideal situation,"

not "a firm limitation"); *DeJesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1685-LHP, 2022 WL 833677, at *7 (M.D. Fla. Mar. 21, 2022) (doctor's observation that claimant "*may* experience difficulties" with a particular workplace demand was equivocal and did not amount to an opinion that claimant was incapable of working under normal circumstances).

In addition, Hearns contends the omitted restrictions regarding work absences marred the RFC because the vocational expert testified an employer would tolerate no more than ten percent off-task time during a workday and no more than one absence per month. Again, however, Drs. Pack and Meyers's statements described preferred or ideal working conditions, rather than additional functional limitations the ALJ needed to incorporate into the RFC.

Overall, substantial record evidence supports the ALJ's findings for Hearns's understanding and memory, concentration, persistence, and pace, social, and adaptation limitations.

### C. Hearns's Reliance on Drs. Sellman and Hogan's Opinions Warrants No Relief

Finally, Hearns contends the ALJ committed reversible error by failing to articulate any consideration of the supportability of Drs. Sellman and Hogan's opinions; failing to explain his omission of Drs. Sellman and Hogan's opined environmental limitations, despite finding the environmental limitations "at least somewhat persuasive," (doc. 20 at 17); omitting Drs. Sellman and Hogan's opined environmental

limitations in the hypotheticals posed to the VE; and improperly basing the RFC determination on his lay opinion. Hearns errs in all regards.

On June 16, 2022, state agency review physician Gloria M. Sellman, M.D., reviewed the medical evidence of record and opined Hearns experienced moderate physical impairment. (Tr. 94-96). Dr. Sellman opined Hearns could sit, stand, and/or walk for a total of about six hours in an eight-hour workday, occasionally lift and/or carry up to fifty pounds, frequently lift and/or carry up to twenty-five pounds, and was otherwise unlimited in her abilities to push and/or pull in upper and lower extremities. (*Id.*). Dr. Sellman further opined Hearns experienced postural limitations in that she could never climb ladders, ropes, or scaffolds, could frequently climb ramps or stairs, balance, stoop, kneel, and could occasionally crawl. (Tr. 94-95). Dr. Sellman commented Hearns should use "[n]o ladders, ropes, or scaffolds." (Tr. 95).

Dr. Sellman also found Hearns experienced environmental limitations in that she should avoid all exposure to hazards (machinery, heights, etc.) and concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (*Id.*). Ultimately, Dr. Sellman assessed Hearns with the ability to perform *medium* capacity work. (Tr. 98).

On August 18, 2023, Victoria L. Hogan, M.D., assessed Hearns's RFC at the state agency reconsideration phase. (Tr. 106-08). Dr. Hogan reviewed the medical evidence of record and concurred with Dr. Sellman's findings. (Tr. 107-08). In

particular, she agreed that Hearns presented the ability to perform *medium* capacity work. (Tr. 110).

The ALJ rejected the state agency consultants' opinions: "The undersigned is not persuaded by these assessments as they are not consistent with the medical evidence of record which notes severe asthma coupled with obesity which suggests that the claimant would be limited to *sedentary* work activity (Exhibits 2A and 4A)." (Tr. 27) (emphasis added).

Therefore, Hearns confusingly complains about the ALJ's adoption of an RFC more restrictive than the opinions levied by Drs. Sellman and Hogan. On its face, Hearns's challenge vis-à-vis these medical opinions warrants no relief on this basis alone. *See James F. v. Comm'r, Soc. Sec. Admin.*, No. 1:21-cv-00084-RDC, 2023 WL 12214982, at *5 (N.D. Ga. Mar. 30, 2023) (The ALJ "identified why she believed Plaintiff's impairments warranted further restrictions than those determined by the state agency medical consultants. 'Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand.'") (citation omitted); *Justin S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1575(ATB), 2022 WL 306445, at *11 (N.D.N.Y. Feb. 2, 2022) (noting "no error in the ALJ assessing an RFC more restrictive than the opinion of the consulting examiner") (citations omitted); *Baker ex rel. Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand." (citing *Castle v.*

*Colvin*, No. 1:15-cv-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand."); *Savage v. Comm'r of Soc. Sec.*, No. 2:13-cv-85, 2014 WL 690250, at *7 (D. Vt. Feb. 24, 2014) (finding no harm to claimant where ALJ adopted an RFC determination that was more restrictive than medical source's opinion))); *Hall v. Comm'r of Soc. Sec.*, No. CV 15-12904, 2016 WL 8115401, at *9 (E.D. Mich. July 25, 2016) (remarking that ALJ's inclusion of RFC restriction not recommended by any physician "only inured to [plaintiff's] benefit as it necessarily reduced the number of jobs available in the national economy which she could perform").

And to be sure, the ALJ did not need to rely upon a medical source opinion to formulate an RFC. As previously discussed, assessing a claimant's RFC lies within the exclusive province of the ALJ. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates*, 2018 WL 1579475, at *8 ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio*, 2017 WL 2656273, at *8 (citations omitted) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Pursuant to Social Security Ruling 96-8p, "the ALJ's residual functional capacity assessment must include 'a narrative discussion describing how the evidence supports

each conclusion' and 'cit[e] specific medical facts . . . and nonmedical evidence.'" *Harvey v. Soc. Sec. Admin., Comm'r*, No. 22-10281, 2022 WL 17175649, at *2 (11th Cir. Nov. 23, 2022) (alterations in original) (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). However, the ALJ does not need to enumerate every piece of evidence or function used in her determination but rather must simply portray consideration of the claimant's medical conditions in totality. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); see also *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009).

As the regulations specifically vest the ALJ with authority to assess the RFC, the mere act of assessing an RFC clearly does not cause an ALJ to exceed applicable authority and impermissibly "play doctor." *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."). *See also Riley v. Comm'r of Soc. Sec.*, No. 6:22-cv-1415-DCI, 2023 WL 2894366, at *3 (M.D. Fla. Apr. 11, 2023) ("Even though the ALJ considers medical opinions in assessing the RFC, it is the ALJ's responsibility to determine the ultimate issue of the Claimant's RFC, and not the physician[']s."); *Whisby v. Colvin*, No. 5:13-CV-360-MTT, 2015 WL 150188, at *3 (M.D. Ga. Jan. 12, 2015) (citations omitted) ("There is no bright line between an ALJ's 'playing doctor,' which is not permissible, and an ALJ's making commonsense decisions, which is permissible. . . . Determining where to draw the line between permissible and impermissible ALJ decision-making requires a fact-intensive review . . . ."). "Importantly, an ALJ does not impermissibly

assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination." *Rivera v. Comm'r of Soc. Sec. Admin.*, No. 23-14135-CIV-MAYNARD, 2024 WL 4356401, at *5 (S.D. Fla. Aug. 5, 2024) (citing *Castle*, 557 F. App'x at 853), *aff'd sub nom.*, No. 24-13090, 2025 WL 2814430 (11th Cir. Oct. 3, 2025).

In the dispute at bar, the ALJ's administrative opinion demonstrates consideration of the totality of Hearns's medical conditions, and substantial evidence supports the ALJ's RFC determination.

As the record reveals, the ALJ discussed medical records addressing Hearns's asthma and obesity. (Tr. 24-26). Medical records from Ascension St. Vincent's portrayed Hearns experienced several exacerbations of asthma and shortness of breath throughout the period for which she sought disability benefits. In August 2019, Hearns visited the emergency department ("ED") at St. Vincent's Birmingham with complaints of shortness of breath lasting five days and chest pain; the ED physician diagnosed Hearns with asthma exacerbation and pleurisy and treated her with a corticosteroid, medication to treat hypertension, a nebulizer, and supplemental oxygen. (Tr. 759-88, 843-91).

Later in August 2019, Hearns visited St. Vincent's ED for acute hypoxic respiratory failure, aspiration pneumonitis, and acute asthma exacerbation, and she was diagnosed with atrial fibrillation. (Tr. 843-91). On November 2, 2019, Hearns returned to St. Vincent's ED with complaints of shortness of breath lasting one week; the ED physician diagnosed Hearns with asthma exacerbation and treated her with nebulizers

and steroids. (Tr. 723-57). On November 27, 2019, Hearns again visited St. Vincent's ED with complaints of shortness of breath lasting several days; the ED physician diagnosed Hearns with asthma exacerbation and treated her with and prescribed a corticosteroid. (Tr. 690-721). In August 2020, she visited St. Vincent's ED for treatment for asthma exacerbation and respiratory failure, which were exacerbated with exertion. (Tr. 942-98). She visited St. Vincent's ED for treatment for sinus tachycardia in February 2021. (Tr. 900-40).

Moreover, the ALJ discussed records from Hearns's visit to the UAB clinic in September 2021 noting Hearns experienced asthma and shortness of breath with very minimal activity, which resulted in a sedentary lifestyle. (Tr. 24, 1001).

The ALJ also discussed treatment Hearns received for asthma and obesity from her primary care provider through Cooper Green Mercy Hospital. (Tr. 25-26, 1046-1143). In January 2020, Hearns's physician assessed her with moderate persistent asthma, obstructive sleep apnea ("OSA") syndrome, and morbid obesity. (Tr. 1047). At the time, Hearns's medication included several inhaler and nebulizer treatments, medication to treat hypertension, and medication to treat gastroesophageal reflux disease ("GERD"). (Tr. 1048).

In June 2020, Hearns attended a pulmonary consultation for worsening asthma symptoms that allegedly caused her to stop working; she specifically described shortness of breath on moderate exertion, chest tightness, wheezing, and coughing. (Tr. 1049). The treating physician assessed Hearns with moderate persistent asthma, ongoing

tobacco abuse, GERD, and chronic sinusitis; he directed Hearns to cease using a Breo Ellipta inhaler and prescribed a Symbicort inhaler twice daily, continued nebulizer treatments four times daily as needed, and counseled her about tobacco cessation. (Tr. 1050).

In November 2020, she attended a pulmonary follow up and reported chronic, daily asthma symptoms; the treating physician continued Symbicort and nebulizer treatments as needed and added a rescue inhaler. (Tr. 1051). In December 2020, Hearns visited Cooper Green for treatment of asthma, obesity, hypertension, OSA, and atrial fibrillation; the treating physician prescribed Hearns aspirin and referred her to a cardiologist. (Tr. 1057-61).

In February 2021, Hearns visited Cooper Green for asthma and tachycardia treatment. (Tr. 1060-66). In May 2021, a cardiologist at Cooper Green diagnosed Hearns with tachycardia, (Tr. 1073-77), and in August 2021 he confirmed that diagnosis, (Tr. 1084-88). In June 2021, Hearns visited Cooper Green for treatment for moderate persistent asthma, and she reported persistent tachycardia, chest tightness, and shortness of breath. (Tr. 1078).

In December 2021 and January 2022, she visited Cooper Green for follow-up treatment regarding asthma and tachycardia; the treating physician continued her asthma medication regimen and continued monitoring her tachycardia. (Tr. 1103-06, 1108-12). In April 2022, Hearns visited Cooper Green for treatment for hypertension and moderate persistent asthma; the treating physician noted her asthma was controlled

on her current medication regimen and he continued her asthma medication. (Tr. 1138-42).

As the foregoing analysis portrays, the ALJ reviewed the record evidence and determined Hearns could perform a range of sedentary work due to severe asthma coupled with obesity. (Tr. 23-27). Hence, substantial evidence supports the ALJ's RFC determination, notwithstanding the less restrictive RFC proposed by Drs. Sellman and Hogan. "It is the ALJ who decides a claimant's RFC, and, by evaluating the record as a whole when making the determination, the ALJ here properly upheld his duty to decide the RFC himself." *Rivera*, 2025 WL 2814430, at *3.

Finally, Hearns contends the ALJ committed reversible error in failing to include Drs. Sellman and Hogan's opined "atmospheric limitations" in the hypothetical posed to the VE, as "it is unclear if those additional limitations would further erode the occupational base beyond the measly 19,000 jobs provided by the vocational expert." (Doc. 20 at 18). As recounted previously, Drs. Sellman and Hogan opined Hearns should "avoid concentrated exposure" to "extreme hot," "extreme cold," "fumes, odors, gases, poor ventilation, etc.," "extreme temperatures, wetness, humidity, and fumes/odors." (Tr. 95). The ALJ posed the following hypothetical to the VE:

> [A]ssume an individual of Ms. Brycelyn G. Hearns' vocational profile and that hypothetical individual ha[s] a limitation to sedentary exertional work activity as we define that term except that the individual could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The individual should never climb ladders, ropes, or scaffolds. The individual could have occasional exposure to extremes of cold, heat, and humidity. The individual should not work from unprotected heights or in close proximity

> to hazardous machinery. The individual would be capable of understanding, remembering, and carrying out simple instructions and tasks. And the individual could have occasional interaction with work-related matters with supervisors, coworkers, and the public.

(Tr. 53-54). Ostensibly, Hearns faults the ALJ for not addressing odors, gases, fumes, and poor ventilation, because surely the hypothetical covered exposure to extreme cold, heat, temperatures, dust, and humidity.

As the Commissioner highlighted, "[t]hough the RFC does not explicitly address the limitation to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 95, 107), the DOT descriptions of the jobs relied upon show that they do not involve any atmospheric or environmental conditions (Tr. 95, 107)." (Doc. 23 at 10) (citing U.S. Dep't of Lab., Dictionary of Occupational Titles 209.567-014 (4th ed. 1991), 1991 WL 671794 (order clerk); *id.* at 713.687-026, 1991 WL 679273 (lens inserter)). Indeed, the evidence cited by the Commissioner portrays no exposure to the identified concerns: "Atmospheric Cond.: Not Present - Activity or condition does not exist"; "Extreme Cold: Not Present - Activity or condition does not exist"; "Extreme Heat: Not Present - Activity or condition does not exist." Dictionary of Occupational Titles 209.567-014, 1991 WL 671794; *id.* at 713.687-026, 1991 WL 679273.

As the Eleventh Circuit has ruled, challenges to RFC assessments omitting specific limitations fail when a claimant does not demonstrate an inability to perform VE-recommended jobs. *See Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *4 (11th Cir. July 27, 2021) ("Peterson has failed to demonstrate that he is

unable to perform the jobs suggested by the VE based on any spelling limitations and, thus, has not met his burden of showing that he is unable to perform the jobs of marker and advertising distributor[.]"). As applied in the circumstances at bar, Hearns likewise failed to demonstrate she was unable to perform the order clerk and lens inserter jobs due to fumes, odors, dusts, gases, and poor ventilation, particularly as those jobs do not present exposure to such atmospheric conditions.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 30th day of September, 2026.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGI+STRATE JUDGE